**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 30, 2024**

# In the Court of Appeals of Georgia

A24A0858. SOBH AUTO, LLC et al. v. RANEKA GREEN.

WATKINS, Judge.

Eleven months after buying a used car, Raneka Green filed a breach of contract action against the dealership that sold her the vehicle. The trial court entered a default judgment in favor of Green and then, in a subsequent order, granted Green's motion to correct a misnomer and changed the defendant's name to match the dealership's proper legal name. The dealership, as well as the incorrectly-named defendant, now seek review of several of the trial court's rulings. For the reasons that follow, we affirm.

In June 2022, Green bought a 2012 Jeep Grand Cherokee and associated warranty from a used car dealership. On the bill of sale, the dealer/seller was identified

as Sobh Auto. Malcom Robertson, the dealership's finance manager, signed the bill of sale for Sobh Auto. Robertson also signed the warranty contract as the "Dealer Representative."

In May 2023, Green filed a breach of contract action in which she named "Sobh Auto, LLC" as the sole defendant. Service of process was completed by leaving a copy of the complaint and summons with Malcom Robertson at the dealership.

After the defendant failed to file an answer to the complaint, Green filed a motion for default judgment. The trial court entered an order finding Sobh Auto, LLC in default and scheduled a hearing on damages. Sobh Auto, LLC then filed a special appearance and motion to set aside or dismiss, arguing that it was not the proper defendant in the case and, moreover, that service on Robertson was insufficient.

When the case was called for a hearing, Sammy Sobh testified that Green bought the car from his "car lot" — International Auto Liquidators, LLC, d/b/a Sobh Auto ("IAC d/b/a Sobh Auto"). Shortly after Green's purchase, Mr. Sobh bought the business adjacent to his car lot and formed a new LLC — Sobh Auto, LLC. Mr. Sobh is the sole owner of both entities; IAC d/b/a Sobh Auto "is a car lot that sells used cars" while Sobh Auto, LLC "is a service center that services used cars."

Mr. Sobh acknowledged that the complaint and summons were served on Robertson, the dealership's finance manager. He asserted, however, that Robertson did not tell him about the lawsuit until after he received a letter from the court advising that a hearing on damages had been scheduled.

In light of Mr. Sobh's testimony, the trial court opined, "I'm hoping we can amend the complaint[.]" Green argued that amendment would be proper because the complaint's identification of Sobh Auto, LLC rather than IAC d/b/a Sobh Auto as the defendant was "clearly a misnomer." Sobh insisted, however, it was not merely a misnomer because the correct corporate entity had never been served.

The trial court entered an order denying the motion to set aside or dismiss, followed by a default judgment against "Sobh Auto, LLC" in the amount of $19,610.31. Green then filed a motion to correct misnomer, seeking to change the defendant's name to IAC d/b/a Sobh Auto. The trial court granted the motion, and Sobh Auto, LLC, and IAC d/b/a Sobh Auto (collectivey, "Sobh") filed this appeal.

1. Sobh contends that the trial court erred by allowing Green to change the defendant's name from Sobh Auto, LLC to IAC d/b/a Sobh Auto.

> Under Georgia law, where there has been actual service on the
> correct defendant but the defendant has been denominated by the wrong

name in the pleadings[,] correction by amendment of this misnomer may be done, *which amendment does not constitute a substitution of parties. . . .* [C]orrection of a misnomer is predicated on the fact that, although misidentified in the original complaint, the correct defendant was nevertheless served with that complaint.[1]

In other words, "[w]here the real defendant was properly served or acknowledged service, an amendment to correct a misnomer to set forth the correct identity of this defendant is not a change of parties requiring a court order, but a correction of a misnomer[.] "[2] Importantly, if there was actual service on the correct defendant, correction of the misnomer may be done without constituting a substitution of the parties even if the name denominated in the pleadings matches the name of another entity.[3]

---

[1] (Citations and punctuation omitted.) *Mathis v. BellSouth Telecommunications, Inc.*, 301 Ga. App. 881, 883 (690 SE2d 210) (2010). Accord *Atlanta Veterans Transp., Inc. v. Westmoreland*, 123 Ga. App. 466 (181 SE2d 504) (1971) ("Where the real defendant has been properly served, a plaintiff has the right to amend in order to correct a misnomer in the description of the defendant contained in the complaint.").

[2] (Citation omitted.) *Moreno v. Carniceria, Loa #2*, 351 Ga. App. 662, 663-664 (832 SE2d 656) (2019).

[3] See *Foskey v. Vidalia City School*, 258 Ga. App. 298, 300 (574 SE2d 367) (2002).

Here, as outlined above, Green incorrectly identified the defendant as Sobh Auto, LLC, rather than the dealership's correct business name, International Auto Liquidators, LLC, d/b/a Sobh Auto. The incorrect name, however, is reasonably recognizable as a misnomer for the real party in interest, given that IAC does business as Sobh Auto.[4] The allegations of the complaint made it clear that Green's claims were against the dealership, rather than against the service center, and Sobh has not established that the irregularities in identifying the defendant's name had any material effect on the dealership's ability to understand that a suit had been brought against it.

Further, the record shows that the summons and a copy of the complaint were left with the dealership's finance manager, Malcom Robertson. Service upon a Georgia corporation may be made by delivering a copy of the summons and complaint "to the president or other officer of such corporation . . . , a managing agent thereof, or a registered agent thereof[.]"[5] "'[M]anaging agent' means a person employed by a corporation . . . who is at an office or facility in this state and who has managerial or

---

[4] See *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693, 696 (2) (a) (527 SE2d 293) (1999) ("A corporation conducting business in a trade name may sue or be sued in the trade name.").

[5] OCGA § 9-11-4 (e) (1) (A).

supervisory authority for such corporation[.]"[6] The trial court found that Robertson was a "managing agent" such that he was authorized to accept service under this provision, and Sobh has not shown that the court's finding was erroneous.

Finally, although the address listed on the affidavit of service matches the business address of the service center rather than the dealership, Sobh has not established that this factor rendered service insufficient under the circumstances. Again, the businesses are located next door to each other and are owned by the same individual, the allegations of the complaint made clear that Green's claims were against the dealership, and service of process was perfected on a person who was authorized to accept service for the dealership.

As we have previously stated,

a suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else. As a general rule the misnomer of a corporation in a notice, summons, notice by publication, garnishment citation, writ of certiorari, or other step in a judicial

---

[6] OCGA § 9-11-4 (e) (1) (B).

6

proceeding is immaterial if it appears that it could not have been, or was not, misled. Georgia cases follow this rationale and do *not* hold that the existence of a mere misnomer authorizes one freely to ignore the fact that he has been served with legal process.[7]

Because IAC d/b/a Sobh Auto was properly served and was merely identified by an incorrect name in the original complaint, Green was authorized to correct the misnomer.

2. Sobh also contends that the trial court erred in its handling of his claim of insufficient service of process. While we recognize that the trial court handled this issue in an irregular manner, we are not persuaded that the court committed reversible error.

This claim of error concerns the hearing that was held on August 31, 2023, when the case came before the trial court for a hearing on damages. Counsel for the defense entered a special appearance 90 minutes before the hearing, arguing that the trial court lacked personal jurisdiction because Green had sued the wrong corporation. In response, Green noted that the same individual, Mr. Sobh, owned both the

---

[7] (Citation and punctuation omitted; emphasis in original.) *Mathis*, 301 Ga. App. at 884.

dealership and the service center and argued that even if the wrong defendant had been named in the complaint, Mr. Sobh should be charged with knowledge of the suit. Because Green had not had time to review Sobh's arguments, however, Green asked for time to prepare a brief on the issue. Defense counsel noted that Mr. Sobh was present in the courtroom and offered to "put him up[ ]" as a proffer.

The trial court then called Mr. Sobh to the witness stand, swore him in, and proceeded to question him regarding the relationship between the dealership and the service center. After Mr. Sobh's testimony, the trial court stated that it was unsure how to proceed. Specifically, the court stated, "I'm hoping we can amend the complaint[,]" and expressed uncertainty as to whether it could "consider this motion [that] was filed today" because it was "way after the default." Green reiterated his position that the misidentification in the complaint was "clearly a misnomer." The trial court then asked Mr. Sobh to explain the capacity in which Robertson was employed, and Mr. Sobh answered that Robertson was "a finance manager." When the trial court asked whether the dealership also had a general manager, Sobh's attorney objected on the ground that the hearing should be limited to the issues of jurisdiction and venue. The trial court overruled the objection and directed defense

8

counsel multiple times to sit down. When counsel protested, saying, "But my client didn't receive notice —" the trial court instructed the deputies to take counsel to the holding cell. Green's attorney stated that he was uncomfortable proceeding without defense counsel present, and the trial court declared that the hearing would be rescheduled.

On appeal, Sobh argues that its due process rights were violated because the trial court proceeded with a hearing even though Green had not filed a response to Sobh's motion. According to Sobh, he was entitled to know how Green would respond to his motion before being forced to proceed with the hearing. Sobh also contends that the trial court erred by conducting a "unilateral interrogation" of Mr. Sobh. We are not persuaded.

Where, as here, a party contends that service of process was insufficient, the trial court's resolution of the motion is governed by OCGA § 9-11-43 (b).[8] Under that provision, when a motion is based on facts not appearing in the record, the trial court may resolve the matter based solely on affidavits presented by the parties, or the court

---

[8] See *Terrell v. Porter*, 189 Ga. App. 778, 779-780 (2) (377 S.E.2d 540) (1989).

may also consider oral testimony and depositions.[9] Typically such motions are resolved in a preliminary hearing,[10] while here the trial court took up the matter during what the parties expected to be a hearing on damages. Because Sobh has not shown that he was prejudiced by the trial court's conversion of the hearing, we decline to find an abuse of discretion.[11]

Moreover, it was Sobh who proffered the testimony of Mr. Sobh as support for his position, so he cannot now claim that the trial court erred by hearing Mr. Sobh's testimony on the matter.[12] And, although it is typically the parties rather than the trial court judge who questions witnesses, it is nonetheless true that

> [a] trial judge may propound questions to a witness to develop the truth of the case, to clarify testimony, to comment on pertinent evidentiary rules and to exercise its discretion when controlling the conduct of counsel or witnesses in order to enforce its duty to ensure a fair trial to

---

[9] OCGA § 9-11-43 (b).

[10] *Carnes v. Reece*, 271 Ga. App. 490 (610 SE2d 135) (2005).

[11] See id. at 492.

[12] See *Le Twigge v. Wammock & Co.*, 187 Ga. App. 446, 448 (370 S.E.2d 631) (1988) ("Where a party voluntarily adopts a certain form of procedure or agrees to the manner in which his rights shall be submitted for determination in the trial court, he will not be permitted to complain, on appeal or error, that proceedings had in conformity thereto were erroneous.") (citation omitted).

both sides. The extent of such examinations is a matter for the trial court's discretion.[13]

Sobh asserts the trial court's questions revealed that the judge was not impartial, but we disagree; as outlined above, the questions elicited relevant information from Mr. Sobh. Finally, while Sobh now complains of a lack of opportunity to "cross-examine" the witness,[14] this claim is not persuasive because Sobh has not demonstrated what further questioning would have revealed.[15]

Under the circumstances, we conclude that Sobh has not established an abuse of discretion in this case.

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur.*

---

[13] (Citations and punctuation omitted.) *Curry v. State*, 283 Ga. 99, 102 (4) (657 SE2d 218) (2008).

[14] We have used the phrase "cross-examine" because that is how Sobh characterizes the issue in its brief. We note, however, that it was the *defense* who proffered Mr. Sobh's testimony.

[15] See *Hillman v. State*, 296 Ga. App. 310, 315 (4) (674 SE2d 370) (2009) ("[E]ven if the trial court erred in not permitting the questions at issue, we find no harm. It is fundamental that harm as well as error must be shown for reversal.") (citation and punctuation omitted).