## CIRCUIT COURT OF FAIRFAX COUNTY

Michelle S. Vick

   v.

Jeffrey M. Schulman et al.

December 21, 2001

Case No. (Law) 192446

BY JUDGE ARTHUR B. VIEREGG, JR.

In this medical malpractice action, plaintiff Michelle S. Vick seeks damages for emotional distress caused by neurological injuries suffered by her daughter at birth. Mrs. Vick and her husband petitioned the Virginia Workers' Compensation Commission for benefits on behalf of their daughter, Caroline F. Vick, pursuant to the Virginia Birth-Related Neurological Injury Compensation Act, Va. Code Ann. §§ 38.2-5000 to 38.2-5021. The Commissioner entered an order[1] granting the Vicks' petition and directing the Virginia Birth-Related Compensation Fund to pay certain amounts allowable under the Act.

Caroline was born on December 25, 1998. The Vicks filed their petition with the Commission on July 14, 2000. The Commission entered its order granting their petition on August 30, 2000. Mrs. Vick subsequently filed this lawsuit on December 19, 2000.

This matter came before the Court on the motion for summary judgment of defendant Dr. Jeffrey M. Schulman. Dr. Schulman contends that Mrs. Vick's suit for emotional distress damages against him is barred by Va. Code § 38.0-5002(B). The remaining defendants, INOVA Health Systems Services

---

[1] See Order of Deputy Commissioner Colville, Defendant Schulman's Exhibit B.

and Virasane S. Vollbrecht, R.N., did not join in Defendant Schulman's Motion for Summary Judgment, nor have they filed separate motions to date.

Dr. Schulman's motion for summary judgment was briefed and argued before me on October 26, 2001. I then took the matters before me under advisement. I am now prepared to decide the merits of Dr. Schulman's motion for summary judgment.

Mrs. Vick first contends that in enacting Va. Code § 38.2-5002(B), the General Assembly did not intend to bar emotional distress claims of a mother of a child who suffered birth-related neurological injuries. Second, Mrs. Vick argues alternatively that a statute barring such a suit would violate a mother's rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and would thus be unenforceable. I will address her arguments in turn.

### I. *Is Mrs. Vick's Claim Barred by Va. Code § 38.2-5002?*

Virginia Code § 38.02-5002(B), upon which Dr. Schulman's motion for summary judgment is based, provides in pertinent part as follows:

> B. . . . the rights and remedies herein granted to an infant on account of a birth-related neurological injury shall exclude all other rights and remedies of such infant, his personal representative, parents, dependents, or next of kin, at common law or otherwise arising out of or related to a medical malpractice claim with respect to such injury. . .

In construing the meaning of this provision, this Court must take the words as written and give them their plain meaning. *Brown v. Lukhard,* 229 Va. 316, 312, 330 S.E.2d 84, 87 (1985). As the Virginia Supreme Court has noted, "courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied." *Anderson v. Commonwealth,* 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944). It is clear from the inclusion of the language "shall include all other rights of such infant, *his personal representative, parents, dependents, or next of kin. . .*" that the General Assembly expressly intended that rights and remedies of certain specified persons *other* than the injured infant would be waived or "excluded" in return for an award of benefits by the Commission on behalf of the infant. As the italicized language quoted above demonstrates, § 38.2-5002(B) explicitly enumerates the parents of a child who

suffered neurological injuries as persons whose rights and remedies are waived or excluded.

This interpretation then necessarily implicates the core question of whether or not Mrs. Vick's rights for compensation for mental distress, allegedly caused by the birth-related injury to her daughter, fall within the scope of those parental rights and remedies waived or excluded. Again, the intention of the legislature must be gathered from the words used, unless a literal construction would invoke a manifest absurdity. *Watkins v. Hall*, 161 Va. 924, 930, 172 S.E.2d 838, 841 (1944). The express words of the statute make plain that the category of rights and remedies waived or excluded are those "arising out of or related to a medical malpractice claim" whether those rights and remedies were recognized "at common law or otherwise." The question before the Court, therefore, becomes whether a parent's right for compensation for such birth-injuries sustained by their child necessarily was intended to fall within the purview of rights and remedies excluded.

The General Assembly adopted broad, inclusive language: "all other rights and remedies . . . arising out of or related to a medical malpractice claim. . . ." The phrase "arising out of" implicates a causation requirement and has been construed as referring to the "origin or cause of the injury." *Bradshaw v. Aronovitch*, 170 Va. 329, 335, 196 S.E.2d 684, 686 (1938). The core of Mrs. Vick's action against Dr. Schulman is that he negligently delivered Caroline, thus *causing* Caroline to suffer neurological injuries. Because Mrs. Vick's claim plainly arises out of the alleged medical malpractice during the labor and delivery of her baby and is otherwise related to such a claim of malpractice, the plain language of the statute expressly precludes Mrs. Vick's claim for emotional distress.

As a result of the plain language of the statute expressly barring Mrs. Vick's claim, this Court need not engage in subsidiary rules of statutory construction to glean the intention of the General Assembly in enacting the statute. However, it is apparent that the above interpretation is consonant with granting an infant injured during birth and the infant's parents a right to receive compensation from the Fund in return for a surrender of other rights and remedies for relief on account of a health care professional's putative malpractice. Accordingly, I conclude that Dr. Schulman's motion for summary judgment must be granted unless Mrs. Vick has demonstrated that § 38.2-5002(B) is unconstitutional.

## II. *Is Va. Code § 38.2-5002(B) Unconstitutional?*

All statutes enacted by the General Assembly are presumed to be constitutional. *Pulliam v. Coastal Emergency Services*, 257 Va. 1, 9, 509 S.E.2d 307, 311 (1999); *King v. Virginia Birth-Related Neurological Injury Compensation Program*, 242 Va. 404, 408, 410 S.E.2d 656, 659 (1991). A litigant who challenges the constitutional validity of a statute bears the burden of showing that the challenged legislation is unconstitutional. *Pulliam*, 257 Va. at 9, 509 S.E.2d at 311; *King*, 242 Va. at 408, 410 S.E.2d at 659. Any reasonable doubt as to the statute's constitutionality must be resolved in favor of its validity. *Id.* 242 Va. 404.

Ms. Vick contends that the Act, as applied to the mother of an infant who has petitioned and who is receiving benefits from the Fund, violates the Equal Protection Clause of the federal constitution. Application of the Act, she argues, denies her equal protection because "she is denied the same rights to sue that mothers who gave birth to an infant whose injuries are not sufficient to satisfy the Act's definition of a birth-related neurological injury." Pl. Suppl. Br. at p. 4.

The Equal Protection Clause states, in part, that no state shall "deny to any person . . . the equal protection of the laws." U.S. Const., Amend. XIV, § 1. An analysis of whether a law violates this Clause requires a threshold determination of whether or not the statute attacked either abridges a fundamental right or creates a suspect class. When a statute involves a fundamental right or classifies by race, alienage, or national origin, the law will be subjected to strict scrutiny and will be sustained only if it is suitably tailored to serve a compelling state interest. *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964). Legislative classifications based on gender or illegitimacy also call for a heightened standard of review. Such classification "will survive equal protection scrutiny to the extent they are substantially related to a legitimate state interest." *Mills v. Habluetzel*, 456 U.S. 91, 99 (1982). And finally, "classifications neither involving fundamental rights nor proceeding along suspect lines do not run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and a legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312 at 319 (1993).

Plainly, Mrs. Vick's right to pursue a common law negligence claim related to purported physician malpractice implicates neither a fundamental right nor suspect classification. Therefore, this Court must apply the rational basis level of scrutiny to ascertain whether the statute can withstand an equal protection challenge. *Heller v. Doe*, at 319-21 (1993). The Virginia Supreme

Court has held that a classification will not be invalidated merely because it results in some inequality or discrimination. *King*, 242 Va. at 411, 410 S.E.2d at 661. Instead, "the rational basis test is satisfied if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose." *Id.*

In applying the rational basis test, this Court must consider whether the General Assembly's enactment of Code § 38.2-5002(B) promotes any such purpose. I conclude it does. As noted in *King*, it is reasonably apparent that the General Assembly enacted the Act to remove the claims of neurologically injured infants from the tort system to decrease the cost of medical malpractice insurance premiums for all physicians, presumably because such premiums would deprive the public of obstetric medical care. See also the Interim Report of the Joint Subcommittee, *"The Definition of Compensable Injury and the Funding Mechanism of the Virginia Birth-Related Neurological Injury Compensation Act,"* House Document No. 63, February 1990. Furthermore, it is also reasonably apparent that the General Assembly structured the Act so that once an injured infant is approved to receive benefits from the Fund, all other tort claims of both the infant and his parents and others, arising out of the delivery, would be barred. Accordingly, because Mrs. Vick has failed to demonstrate that the Act, and more specifically § 38.2-5002(B), does not promote a legitimate governmental purpose, I conclude that the challenged exclusive rights and remedy provision of the Act, as applied to mothers claiming injuries arising out of the labor and birth of a child receiving benefits from the Fund, is constitutional.

This Court grants Defendant Dr. Schulman's Motion for Summary Judgment on the ground that the Act specifically excludes recovery by a parent whose claim arises out of or is related to a medical malpractice claim with respect to an injury sustained by an infant who is receiving benefits under the Act.